## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MICHAEL BLAKES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 16-CV-3107 |
| | ) | |
| DIRECTOR GODINEZ, et. al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**CASE MANAGEMENT ORDER**

Sue E. Myerscough**,** U.S. District Judge.

This cause is before the Court for consideration of Plaintiff's

motion for leave to file an amended complaint, [45]; Plaintiff's

motion to supplement his proposed amended complaint, [62];

Defendants motion for summary judgment on the issue of

exhaustion of administrative remedies, [48]; Plaintiff's motion to file

an affidavit in support of his response to the dispositive motion,

[57]; and Defendants' motion for additional time to file a reply to

Plaintiff's response to the dispositive motion, [58].

## I. BACKGROUND

Plaintiff, a pro se prisoner, filed his lawsuit pursuant to 42 U.S.C.§1983 alleging his constitutional rights were violated at Western Illinois Correctional Center based on facility-wide shakedowns and searches. Plaintiff currently has the following six claims before the Court:

1) John Doe Orange Crush Team Members violated Plaintiff's Eighth Amendment rights during a strip search and shakedown on April 16, 2014;

2) John Doe Orange Crush Team Members violated Plaintiff's his Eighth Amendment rights during a shakedown on April 18, 2014;

3) John Doe Orange Crush Team Members were deliberately indifferent to Plaintiff's serious medical condition on April 16, 2014;

4) John Doe Orange Crush Team Members used excessive force against the Plaintiff in violation of his Eighth Amendment rights on April 18, 2016;

5) Defendants Major Byron Law, Lieutenant John Hamilton, John Doe #1 and John Doe #2 failed to intervene to stop the violation of Plaintiff's constitutional rights on April 16, 2014, and April 18, 2014; and,

6) Defendants IDOC Director Salvador Godinez and Warden Jeff Korte violated Plaintiff's Eighth Amendment rights based on the unconstitutional policy and practice of the Orange Crush Teams. *See* July 22, 2016 Merit Review Order.

After repeated efforts to identify the John Doe Defendants,

Plaintiff filed a motion for substitution. *See* November 16, 2016 Text Order; [21, 22, 23]. However, Plaintiff's motion left confusion concerning his intended claims.*See* September 5, 2017 Case Management Order. Therefore, to clarify the record, Plaintiff was directed to file an amended complaint "clearly setting forth each of his intended claims against each of the identified Defendants." September 5, 2017 Case Management Order, p. 9.

## II. MOTION TO AMEND

Plaintiff's motion for leave to amend is granted pursuant to Federal Rule of Civil Procedure 15. *See* Fed.R.Civ.P. 15. Nonetheless, the Court is still required by 28 U.S.C. §1915A to "screen" the Plaintiff's amended complaint, and through such process to identify and dismiss any legally insufficient claim, or the entire action if warranted. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A.

Plaintiff's second amended complaint lists 53 separate Defendants and again refers to two facility-wide events which

occurred on April 16, 2014 and April 18, 2014 at Western Illinois Correctional Center.

On April 16, 2014, Plaintiff says the Orange Crush Team entered his housing unit and yelled for all inmates to "strip." (Amd. Comp., p. 6). After Plaintiff complied, Defendants John Peterson and Mark Smith physically searched Plaintiff ordering him to spread his buttocks, lift his penis, and then use his fingers to open his mouth. Plaintiff claims female officers were able to watch the entire strip search.

Plaintiff was allowed to dress before Defendants Peterson and Smith handcuffed him. Plaintiff says the handcuffs were intentionally applied in a painful way with his palms out and his thumbs facing up. When Plaintiff and other inmates complained of pain, they were told to shut up.

Defendant Lenning ordered Plaintiff to put his head on the inmate in front of him and he was forced to walk in this manner all the way to the gym. Plaintiff complained he needed medical attention for his back and wrist pain, but Defendant Smith again told Plaintiff to shut up or he would be going to segregation.

Plaintiff claims several inmates lifted their heads to complain about pain, but officers responded with violence. Plaintiff does not allege any specific officer hit him or used any violence against him during this time. However, Plaintiff says several officers were clearly aware he was suffering in pain, but they failed to intervene including: Steve Ryan, Steve Fulford, Octavis Payne, Trent Karnes, Stephen Bradshaw, Roger Stirrett, Nicole Berry, Brian Moore, Rebecca Chadwell, Chris Gideon, Caleb Duckett, Jeremy Harris, Matt Beswick, Jacob Clements, Justin Dannehold, Lucas Edgar, Josh Eichelberger, Kenneth Evans, John Graham, Chris Icenogle, Brant Mountain, Kyle Mountain, Kendall Stinebaker, Fred Burns, and Joe Curry. (Amd. Comp., p. 8).

Once the inmates arrived at the gym, Defendant Matt Smith ordered Plaintiff and the other handcuffed inmates to stand with their heads down and foreheads against the wall. Plaintiff says he remained in this position for two hours without use of a bathroom, water, or medical treatment. An officer yelled, "Thank your fellow inmates for this shit, if you ask us for anything you're getting fucked up." (Amd. Comp., p. 9).

Plaintiff says several officers again failed to intervene. Plaintiff lists all of the same officers with the exception of Fred Burns and Joe Curry. Instead, Plaintiff adds Defendants John Hamilton and Byron Law to the list of officers who failed to intervene while Plaintiff was forced to stand for two hours in the gym. (Amd. Comp., p. 9).

Eventually, Defendants Kenneth Evans and John Graham pulled Plaintiff out of the line and took him to segregation. Plaintiff claims the officers twisted his arms and ignored his requests for medical treatment. Once in segregation, Plaintiff was again strip searched. Plaintiff does not say who conducted this second search, nor why he was sent to segregation.

On April 18, 2014, the Orange Crush Team entered the segregation unit "and applied the same shakedown procedures." (Amd. Comp., p. 10). Plaintiff does not specifically state whether inmates were strip searched. However, the Court notes Plaintiff does not allege a strip search was conducted during this second encounter in either of his two previous complaints. (Comp,[1], p. 7; Amd. Comp., [11], p. 7). Instead, Plaintiff says the handcuffs were

again applied in a painful manner, the inmates were escorted to the segregation yard, and forced to kneel on cement with their heads leaning on a gate. Plaintiff says Defendant Law issued the orders to the inmates and Defendant Smith applied the handcuffs to Plaintiff.

After 30 minutes in this position, Plaintiff says he fell to the ground in extreme pain. Defendant Smith and others then began kicking Plaintiff and forced him back to his knees.

Plaintiff again says several officers witnesses the incident, but failed to intervene including: Defendants Thomas Thompson, John Peterson, Heath McDowell, Derek Durbin, Monte Waterman, Mario Catarinacchia, Darryl Davenport, Garret Nickle, Troy Greene, John Sonneborn, Peter Sitch, John Brotz, Josh Durbin, Sean Anderson, Duran Rademaker, T.J. Swarts, Tony Riss, Joe Curry, Ashley Shafer, and Fred Burns. (Amd. Comp., p. 11).

As a result of the two incidents, Plaintiff says he suffered with severe pain in his wrists, neck, and back, as well as severe headaches, dizziness, blurred vision, and emotional distress.

Plaintiff says the two shakedowns conducted at Western Illinois Correctional Center in April of 2014 were part of a policy

and practice within the Illinois Department of Corrections (IDOC) which allowed the same humiliating and painful searches at facilities throughout the state. Plaintiff claims Defendants Warden Korte, Illinois Department of Corrections (IDOC) Director Godinez and Chief of Operations Yurkovich were responsible for these policies and practices.

Based on the allegations in his complaint, Plaintiff says the two shakedowns violated his Eighth Amendment rights, the Defendants conspired to violate his Eighth Amendment rights, Defendants failed to intervene to stop the Eighth Amendment violation, Defendants were deliberately indifferent to his serious medical condition, and Defendants committed the state law tort of intentional infliction of emotional distress.

Plaintiff has adequately stated each claim. However, Plaintiff is advised he may not recover damages for his official capacity claim. *See Williams v. Wisconsin*, 336 F.3d 576, 580 (7th Cir. 2003). Instead, he is limited to declaratory and injunctive relief. *Id.* at 581.

Furthermore, since Plaintiff's official capacity claim is based on an overall IDOC policy or practice, the appropriate Defendant for

his official capacity claim is IDOC Director Godinez, not the Warden

or Chief of Operations.  Therefore, the Court will dismiss Defendants Korte and Yurkovich since Plaintiff does not allege an individual capacity claim against either Defendant. *See Wilson v. Warren Cty., Illinois*, 2016 WL 3878215, at *3 (7th Cir. 2016)(to be held liable under §1983, a plaintiff must "show that the defendants were personally responsible for the deprivation of their rights.").

The Court also notes it is unfortunate the second amended complaint includes so many Defendants when it is doubtful each of the named individuals was directly involved with the Plaintiff. However, Plaintiff says the Orange Crush Team was wearing gear which hid their identities.  When the Court asked Defendants to provide the names of the Orange Crush team members who participated in the two specific searches in the two specific areas mentioned, Defendants provided all of the names Plaintiff has identified in his second amended complaint. [21]. In addition, Defendants chose not to file a response to Plaintiff's motion for leave to amend his complaint.

Therefore, based on the Court's review of Plaintiff's second amended complaint, Plaintiff has articulated the following claims[1]:

1) Defendants John Peterson and Mark Smith violated Plaintiff's Eighth Amendment rights during a strip search and shakedown on April 16, 2014.

2) Defendants Peterson, Smith, and Lenning violated Plaintiff's Eighth Amendment rights when Plaintiff was handcuffed too tight, forced to walk in a painful manner, and forced to stand with his head against the gym wall for approximately two hours on April 16, 2014.

3) Defendants Steve Ryan, Steve Fulford, Octavis Payne, Trent Karnes, Stephen Bradshaw, Roger Stirrett, Nicole Berry, Brian Moore, Rebecca Chadwell, Chris Gideon, Caleb Duckett, Jeremy Harris, Matt Beswick, Jacob Clements, Justin Dannehold, Lucas Edgar, Josh Eichelberger, Kenneth Evans, John Graham, Chris Icenogle, Brant Mountain, Kyle Mountain, Kendall Stinebaker, Fred Burns, and Joe Curry violated Plaintiff's Eighth Amendment rights when they failed to intervene during the painful and humiliating walk to the gym on April 16, 2014.

4) Steve Ryan, Steve Fulford, Octavis Payne, Trent Karnes, Stephen Bradshaw, Roger Stirrett, Nicole Berry, Brian Moore, Rebecca Chadwell, Chris Gideon, Caleb Duckett, Jeremy Harris, Matt Beswick, Jacob Clements, Justin Dannehold, Lucas Edgar, Josh Eichelberger, Kenneth Evans, John Graham, Chris Icenogle, Brant Mountain, Kyle Mountain, Kendall Stinebaker, John Hamilton, and Byron Law failed to intervene when Plaintiff was made to stand in a painful position in the gym for approximately two hours on April 16, 2018.

---

[1] For clarification, although Plaintiff mentions the impact the searches and shakedowns had on other inmates, the claims before the Court are limited to the Plaintiff. This is not a class action or multi-plaintiff lawsuit.

5) Defendants Smith, Evans, and Graham were deliberately indifferent to Plaintiff's serious medical condition when they refused Plaintiff's requests for medical care for his pain on April 16, 2018.

6) Defendants Law and Smith violated Plaintiff's Eighth Amendment rights on April18, 2014 when handcuffs were applied in a painful manner and Plaintiff was forced to kneel for more than 30 minutes.

7) Defendant Smith used excessive force on April 18, 2018 when he repeatedly kicked Plaintiff after he fell in pain.

8)Defendants Thomas Thompson, John Peterson, Heath McDowell, Derek Durbin, Monte Waterman, Mario Catarinachhia, Darryl Davenport, Garret Nickle, Troy Greene, John Sonneborn, Peter Sitch, John Brotz, Josh Durbin, Sean Anderson, Duran Rademaker, T.J. Swarts, Tony Riss, Joe Curry, Ashley Shafer, and Fred Burns failed to intervene on April 18, 2014.

9) Defendant Godinez violated Plaintiff's Eighth Amendment rights based on an unconstitutional IDOC policy regarding humiliating and painful strip searches and shakedowns.

10) All named Defendants conspired to violate Plaintiff's Eighth Amendment rights.

11) All named Defendants committed the state law tort of intentional infliction of emotional distress.

### III.MOTION TO SUPPLEMENT

Plaintiff has also filed a motion to supplement his second amended complaint. [62]. Typically, the Court does not allow

piecemeal amendments to complaints in order to avoid confusion over potential claims and defendants. However, Plaintiff is only asking to add the dollar amount of damages he is requesting. Therefore, the motion is granted. [62].

## IV. MOTION FOR SUMMARY JUDGMENT

Defendants have filed a motion for summary judgment on the issue of exhaustion of administrative remedies. [48]. Plaintiff's motion to file an affidavit in support of his response to the dispositive motion, and Defendants' motion for additional time to file a reply to Plaintiff's response are both granted. [57, 58]. Defendants have now filed their reply, and the Court will consider all documents filed by the parties.

### A. LEGAL STANDARD

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). A movant may demonstrate the absence of a material dispute through specific cites to admissible evidence, or by showing that the nonmovant "cannot produce admissible evidence to support the [material] fact." Fed.R.Civ.P. 56(c)(B). If the movant

clears this hurdle, the nonmovant may not simply rest on his or her allegations in the complaint, but instead must point to admissible evidence in the record to show that a genuine dispute exists. *Id.; Harvey v. Town of Merrillville*, 649 F.3d 526, 529 (7th Cir. 2011). "In a §1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010).

At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. *Id.*

B. FACTS

As noted, Plaintiff's allegations occurred at Western Illinois Correctional Center on April 16, 2014 and April 18, 2014. Plaintiff filled out three separate grievances on April 23, 2014 and one grievance on April 28, 2014. None of the grievances were submitted

through the emergency grievance procedures and only two of the four grievances pertain to the claims before the Court.

For instance, in the first grievance dated April 23, 2014, complained that members of the Orange Crush Team shook down Plaintiff's cell on April 16, 2014 and took several items of personal property including a pillow, trimmers, a chessboard, lotion, gym shoes, sweatpants, and other items. (Def. Resp., [26], Ex. A, p. 2). The Administrative Review Board (ARB) received the grievance on July 9, 2014 and informed Plaintiff he needed to first address issues concerning personal property at his current facility prior to ARB review. (Def. Resp., [26], Ex. A, p. 1).

In Plaintiff's second April 23, 2014 grievance, Plaintiff said he was placed on investigative status on April 16, 2014, but he was not allowed to keep all of his property. The ARB also received this grievance on July 9, 2014 and returned it to the Plaintiff. Plaintiff was again directed to address the issue first at his facility, and to include a copy of the grievance officer and warden's response with any appeal to the ARB. (Def. Resp., [26], Ex. A, p. 3).

Plaintiff's final grievance dated April 23, 2014 addresses some, but not all of the claims currently before the Court. (Def. Resp.,

[26], Ex. A, p. 6-7). Plaintiff notes he was placed in segregation on April 16, 2018.  However, the focus of his grievance pertains to April 18, 2014.  Plaintiff says on this day, members of the Orange Crush Team handcuffed him and forced him to kneel on concrete for so long that he fell to the ground. Plaintiff claims the officers then kicked him and forced him to continue kneeling. (Def. Resp., [26], Ex. A, p. 6-7).

The grievance is also stamped received by the ARB on July 9, 2014, but it is not clear from the documents presented whether Plaintiff received a separate response to this grievance, or the ARB's previous responses were also meant to include this grievance. (Def. Resp., [26], Ex. A). In other words, Plaintiff submitted three grievances dated April 23, 2014, each was received by the ARB on July 9, 2014, but Plaintiff received only two responses from the ARB.

On April 28, 2014, Plaintiff filled out a fourth grievance and this document pertains to both incidents in Plaintiff's complaint. (Def. Resp., [26], Ex. A, p. 9-10).  Plaintiff says on April 16, 2014, the Orange Crush Team shook down his cell, handcuffed him, and took Plaintiff to the gym where he was forced to stand for over an

hour.  Plaintiff again complains about officers taking his personal property.

Plaintiff was taken from the gym to segregation and claims officers were "severely twisting" his arms and shoulders backwards while escorting Plaintiff to his new cell. (Def. Resp., [26], Ex. A, p. 9-10).

Plaintiff then alleges on April 18, 2014, the Orange Crush Team shook down segregation cells.  This time Plaintiff says he was taken to the yard where he was forced to kneel on concrete for about 30 minutes before he fell over in pain.  Plaintiff says officers kicked him and forced him back to his knees. (Def. Resp., [26], Ex. A, p. 10).

The ARB received this grievance on May 5, 2014, but refused to consider it. (Def. Resp., [26], Ex. A, p. 8).  Instead the grievance was returned to Plaintiff again reminding him he must first address the issue at his facility and provide a copy of the grievance officer's and warden's response with any appeal to the ARB.

Grievance Officer Tara Goins is familiar with all grievance procedures at Western Illinois Correctional Center and the Illinois Department of Corrections (IDOC). (Def. Reply, [59], Goins Aff., p.

1). Any inmate who wishes to file a grievance must use the grievance form and indicate what happened, when it occurred, and who was involved.  The inmate must then sign and date the document and place it in the grievance box on the wing of each housing unit.  The grievance officer then collects the grievances from the box once a week. (Def. Reply, [59], Goins Aff., p. 1).

Goins says she reviews each grievance to see if it is marked as an emergency or if it concerns a disciplinary issue.  If the document is marked as an emergency, then the grievance officer sends it to the Warden's office.  If the grievance concerns a disciplinary issue, the grievance bypasses the grievance counselor, and the issue is directly addressed by the grievance officer. (Def. Reply, [59], Goins Aff., p. 1).

All other grievances are given to the offender's assigned counselor.  The grievance counselor then provides a response to the inmate.  If the inmate is not satisfied with that response, the inmate can then appeal to Grievance Officer Goins. (Def. Reply, [59], Goins Aff., p. 2).  Grievance Officer Goins says when a grievance was appealed, she would log the date received and then provide a response to the inmate.

The name of the grievance counselor for each wing is posted in the housing unit. (Def. Reply, [59], Goins Aff., p. 3). Officer Mark Grille was Plaintiff's assigned counselor from April 23, 2014 to May 6, 2014. Plaintiff's assigned counselor in June of 2014 was Officer Roger Landon who is currently on military leave. (Def. Reply, [59], Goins Aff., p. 3).

Counselor Gille says he was assigned to all offenders housed in Unit 1, C wing from February of 2014 through May of 2014. (Def. Reply, [59], Gille Aff., p. 1). Gille states it was his practice to respond to any grievance within two weeks of receipt unless he was waiting for a response from a specific department. If Gille had not received a department response within 60 days, he would fill out the counselor's response section of the grievance instructing the inmate to send his grievance on to the grievance officer. (Def. Reply, [59], Gille Aff., p. 1-2).

Gille says he has no memory of receiving any grievances from the Plaintiff concerning April 2014 cell shakedowns or searches.

Grievance Officer Goins also says she has reviewed her grievance log for 2014 and she has no record of any grievance from

the Plaintiff at Western concerning cell shakedowns in April of 2014. (Def. Reply, [59], Goins Aff., p. 2).

Goins admits sometimes inmates send letters to her asking about the status of a grievance.

> [I]t is my practice to check my log to see if I have a record of receiving the grievance. If I have a record of it, I draft a memo to the offender letting him know that I have received his grievance and give him the grievance number. If I do not have a record of receiving the grievance, I will draft a memo to the offender letting him know I have no record of receiving his grievance and instruct him to follow up with his assigned counselor…Whether I have a record of the grievance or not, I always respond to the offenders request for status. ((Def. Reply, [59], Goins Aff., p. 3).

C. ANALYSIS

Defendants argue Plaintiff cannot demonstrate he exhausted his administrative remedies as required before filing his lawsuit on April 14, 2016. The Prison Litigation Reform Act (PLRA) bars a prisoner from filing actions under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo, v. McCaughtry,* 286 F.3d 1022,

1025 (7th Cir.2002). If a prisoner fails to follow the specific requirements, his case will be dismissed. *Id.*

However, an inmate is only required to pursue "available" administrative remedies. 42 U.S.C. §1997e(a). The PLRA does not define "availability" for purposes of the exhaustion requirement. However, the Seventh Circuit has held that the "availability of a remedy is not a matter or what appears on paper, but, rather, whether the paper process was in reality open for the prisoner to pursue." *Wilder v Sutton*, 2009 WL 330531 at *3 (7th Cir. Feb. 11, 2009) *citing Kaba v Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). For instance, the grievance procedure is unavailable "if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). "In such cases, the prisoner is considered to have exhausted his administrative remedies." *Pyles v. Nwaobas*i, 829 F.3d 860, 864 (7th Cir. 2016); *see also Turley v. Rednour*, 729 F.3d 645, 650 n. 3 (7th Cir. 2013) (collecting cases).

Since exhaustion is an affirmative defense, the burden of proof is on the defendants. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

Defendants argue Plaintiff did not name the Defendants or include all of his allegations in his grievances. The exhaustion requirement was designed to give prison officials the chance to address an inmate's complaint internally before the filing of federal litigation. *See Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Therefore, an inmate is not required to name each Defendant as long as the grievance alerts prison staff to the nature of the problem, so prison officials are afforded an opportunity to respond to the alleged problem. *See Westefer v. Snyder*, 422 F.3d 570, 580 (7th Cir. 2005); *Pavey,* 663 F.3d at 905-06; *see also Conley v. Mathes*, 2010 WL 3199750, at *3 (C.D.Ill. Aug.10, 2010)( the majority of the federal courts of appeals have not endorsed a requirement that a defendant to a civil suit first be named in an inmate's prison grievance to constitute exhaustion under 42 U.S.C. § 1997e(a)."); *Shaw v. Frank,* 2008 WL 283007 at 10 (E.D.Wis. Jan. 31, 2008) ("the standard is whether the offender complaint would put an official on notice of the plaintiff's claim.").

The Plaintiff clearly alleges the officers were members of the Orange Crush Team wearing "tactical gear" which covered their faces and therefore Plaintiff could not identify them by name. (Def. Resp., [26], Ex. A, p. 9). In short, Plaintiff provided sufficient notice that his complaints involved members of the tactical team.

 In addition, Plaintiff provided enough details of the alleged events on April 18, 2014 to put the Defendants on notice of his claims. For instance, Plaintiff states in two grievances that he was handcuffed and forced to kneel on cement for more than 30 minutes. (Def. Resp., [26], Ex. A, p. 6, 10). Plaintiff also claims when he fell in pain, officers picked him up and forced him to continue kneeling. (Def. Resp., [26], Ex. A, p. 6, 10).

However, Plaintiff's grievances do not include all of the allegations before this Court concerning the events of April 16, 2014. In fact, Plaintiff's biggest complaint in two of the four grievances is that officers took his property.

However, one of Plaintiff's April 23, 2016 grievances and his April 28, 2014 grievance both mention the time Plaintiff spent in the gym. (Def. Resp., [26], Ex. A, p. 6-7, 9-10). Plaintiff says he was handcuffed and made to stand with his head on the wall for over an

hour.  Plaintiff again mentions officers taking his property and officers twisting his arms and shoulders when he was later moved to segregation. (Def. Resp., [26], Ex. A, p. 9-10).  However, Plaintiff makes no mention of a strip search or female officers in the vicinity. (Def. Resp., [26], Ex. A, p. 9-10).  Plaintiff makes no mention of officers applying handcuffs too tightly or forcing him to walk in a painful manner to the gym. (Def. Resp., [26], Ex. A, p. 9-10).

In his response to the dispositive motion, Plaintiff fails to explain why none of this information was included in any grievance and why he failed to put the Defendants on notice of these claims. Instead, Plaintiff simply says the "institution was put on notice" that he "had issues regarding his handcuffs and the condition in the gym." (Plain. Resp., [56], p. 3).

Therefore, the Court finds Plaintiff has failed to properly exhaust his administrative remedies for any claims involving a strip search or a painful and humiliating walk to the gym on April 16, 2014, so the motion for summary judgment is granted as to these two claims.

Defendants also argue Plaintiff failed to abide by the requirements of the grievance procedures because he did not first address his complaints at his facility before appealing to the ARB. Defendants maintain Plaintiff frequently ignores the required procedures, and sends his grievances directly to the ARB. For instance, the Grievance Officer says Plaintiff has bypassed the facility grievance procedure on 20 occasions since 2011. (Def. Reply, [59], Goins Aff., p. 3).

Even when the ARB specifically admonished Plaintiff that he must first file his grievances at his correctional center, Defendants argue Plaintiff took no further steps to abide by the grievance requirements.

In response to the dispositive motion, Plaintiff says he did attempt to submit a grievance at Western Illinois Correctional Center. Plaintiff says he sent his relevant grievance dated April 23, 2014 to "the counselor, grievance officer, and warden." (Plain. Resp., [56], p. 1, Ex.A). Plaintiff does not explain why he submitted the grievance to all three individuals. In addition, the Court notes this grievance is limited to the events which Plaintiff alleges occurred on April 18, 2018.

Plaintiff says he next sent a grievance to the ARB on April 28, 2014. However, Plaintiff sent a different grievance to the ARB that complained about incidents which occurred on both April 16, 2014 and on April 18, 2014. (Plain. Resp., [56], p. 1, Ex. B). Plaintiff admits he received an ARB response on June 16, 2014 reminding him he must complete the grievance procedures at his facility before appealing to the board.

Rather than submit this second grievance at Western Illinois Correctional Center, "Plaintiff waited for a response to his 4/23/14 grievance." (Plain. Resp., [56], p. 2). When he heard nothing back, Plaintiff says he sent letters to the counselor, grievance officer, and warden on June 29, 2014. (Plain. Resp., [56], p. 2, Ex. C). Plaintiff has attached three letters and each simply asks why he has not received a response to his April 23, 2014 grievance. (Plain. Resp., [56], Ex. C).

Plaintiff says, when he still had not received a response by July 7, 2014, he sent a "letter/grievance" to the ARB notifying the board that Western Illinois Correctional Center was not processing his grievances. (Plain. Resp., [56], p. 2). Plaintiff says he specifically

complained he had not received a response to his original grievance dated July 23, 2014.

Plaintiff has provided a copy of the "letter/grievance" he sent to the ARB and an affidavit verifying he put the document in the institutional mail on July 7, 2014 with copies of seven grievances. (Plain. Resp., [56], p. 14, Ex. D). Plaintiff specifically mentions his relevant grievance dated April 23, 2014 and the lack of response received at Western. However, while Plaintiff outlines other grievances he claims were ignored, he makes no reference to his grievance dated April 28, 2014. (Plain. Resp., [56], p. 14, Ex. D).

Furthermore, the actual document sent to the ARB refers to Plaintiff's previous grievance complaining about officers taking his property on April 16, 2014 and a previous grievance pertaining to "staff conduct and being assaulted by staff on 4/18/14." (Plain. Resp., [56], Ex. D, p. 17). Plaintiff does not mention any previous grievances referring to a strip search, a painful and humiliating walk to the gym, or standing with his head against a wall.

Nonetheless, Plaintiff argues the ARB ignored his complaints about the grievance process, and continued to give him the "run around" by again instructing him to submit his grievance at his

facility before appealing to the ARB. (Plain. Resp., [56], p. 4, Ex. D). Based on the lack of response to his grievances, Plaintiff says he exhausted all available administrative remedies.

The Court notes Plaintiff admits he only filed two grievances which pertain to the claims before the Court. The first is dated April 23, 2014, and the second is dated April 28, 2014.

Plaintiff says he submitted the first, April 23, 2014 grievance to the appropriate individuals at his correctional center, but he did not receive a response. Arguably, Plaintiff exhausted all available administrative remedies.

However, Plaintiff also admits he only submitted the second, April 28, 2014 grievance to the ARB and he never followed the required procedures by filing this grievance at his facility. In addition, any of Plaintiff's subsequent letters or complaints about a lack of response only made reference to Plaintiff's first grievance. Therefore, Plaintiff did not exhaust his administrative remedies for his second, April 28, 2014 grievance.

The surviving, April 23, 2014 grievance further limits Plaintiff's claims since Plaintiff does not mention the alleged incidents on April 16, 2014. In fact, the only mention of April 16, 2014 in the

document is Plaintiff's statement that he was moved to segregation on this date.

Therefore, taking all the evidence in the light most favorable to the Plaintiff, he failed to exhaust his administrative remedies for any grievance complaining about any incident on April 16, 2018, and the Court must dismiss any remaining claims pertaining to this date.

Defendants next argue the Court should also dismiss Plaintiff's allegations concerning the second incident on April 18, 2014. Defendants maintain Plaintiff's claims that he did submit his surviving grievance at his facility and sent follow-up letters is simply not credible.

The Court's "job when assessing a summary judgment motion is not to weigh evidence, make credibility determinations, resolve factual disputes and swearing contests, or decide which inferences to draw from the facts." *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). Defendants have not met their burden concerning Plaintiff's allegations regarding the second incident on April 18, 2018, and the motion for summary judgment regarding these claims is denied.

However, since exhaustion of administrative remedies is an issue the Court must address before considering the merits of Plaintiff's specific claims, the Court will set this matter for a hearing to address the remaining factual disputes. *See Pavey v Conley,* 554 F3d. 739, 741 (7th Cir. 2008)("debatable factual issues relating to the defense of failure to exhaust administrative remedies" are to be determined by the judge, not a jury).

## CONCLUSION

The motion for summary judgment on the issue of exhaustion of administrative remedies is granted in part and denied in part.

[48]. Plaintiff now has the following surviving claims:

> 1) Defendants Law and Smith violated Plaintiff's Eighth Amendment rights on April18, 2014 when handcuffs were applied in a painful manner and Plaintiff was forced to kneel on cement for more than 30 minutes.

> 2) Defendant Smith used excessive force on April 18, 2018 when he repeatedly kicked Plaintiff after he fell.

> 3) Defendants Thomas Thompson, John Peterson, Heath McDowell, Derek Durbin, Monte Waterman, Mario Catarinachhia, Darryl Davenport, Garret Nickle, Troy Greene, John Sonneborn, Peter Sitch, John Brotz, Josh Durbin, Sean Anderson, Duran Rademaker, T.J. Swarts, Tony Riss, Joe Curry, Ashley Shafer, and Fred Burns failed to intervene on April 18, 2014.

4) Defendant Godinez violated Plaintiff's Eighth Amendment rights based on an unconstitutional policy regarding humiliating and painful strip searches and shakedowns in IDOC facilities.

5) All named Defendants conspired to violate Plaintiff's Eighth Amendment rights.

6)) All named Defendants committed the state law tort of intentional infliction of emotional distress.

All other claims and Defendants will be dismissed.

This matter will now be set for a *Pavey* hearing. During the hearing, the Court will only consider evidence concerning whether or not Plaintiff exhausted his administrative remedies for his surviving claims. The Court will not consider any evidence regarding the veracity of Plaintiff's surviving claims.

Therefore, the Court will first schedule a telephone status hearing to determine whether any witnesses or additional evidence is necessary for the *Pavey* hearing.

IT IS THEREFORE ORDERED:

1) Plaintiff's motion for leave to file a second amended complaint is granted pursuant to Federal Rule of Civil Procedure 15. [45]. Plaintiff's motion to supplement the second

amended complaint to add his requested damages is also granted. [62].

2) Plaintiff's motion to file an affidavit in support of his response to the summary judgment motion, and Defendants' motion for additional time to file a reply to Plaintiff's response are both granted. [57, 58]. Defendants have filed their reply.

3) Defendants motion for summary judgment on the issue of exhaustion of administrative remedies is granted in part and denied in part. [48]. Plaintiff's claims are limited to the events of April 18, 2014 as outlined in this order.

4) The Court notes Plaintiff's surviving claims are alleged against Defendants Law, Smith, Thomas Thompson, John Peterson, Heath McDowell, Derek Durbin, Monte Waterman, Mario Catarinachhia, Darryl Davenport, Garret Nickle, Troy Greene, John Sonneborn, Peter Sitch, John Brotz, Josh Durbin, Sean Anderson, Duran Rademaker, T.J. Swarts, Tony Riss, Joe Curry, Ashley Shafer, Fred Burns, and Godinez. The Clerk of the Court is to add the new Defendants and dismiss Defendants Hamilton, Korte, and all John Does as Plaintiff has

failed to articulate a claim upon which relief can be granted against these individuals.

5) Before addressing service of process of the additional Defendants, the Court will conduct a hearing pursuant to *Pavey v Conley,* 554 F3d. 739 (7th Cir. 2008) to resolve the remaining factual disputes.

ENTERED: September 11, 2018.

FOR THE COURT:

s/ Sue E. Myerscough

_____
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE